```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
WAYNE GARDINE,
                     Petitioner,

    -against-

                                      04 Civ. 1819 (KMW) (DFE)
                                                ORDER
MICHAEL McGINNIS,

                     Respondent.
-----------------------------------------x
```
KIMBA M. WOOD, U.S.D.J.

Petitioner Wayne Gardine ("Petitioner") is currently serving a term of 18 1/2 years to life after a jury convicted him of Murder in the Second Degree and Criminal Possession of a Weapon in the Second and Third Degrees.  He has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing: (1) that he was denied a fair trial; (2) that his Sixth Amendment right to confront witnesses was violated; (3) that the People violated his constitutional rights by withholding a police radio communication in violation of Brady v. Maryland, 373 U.S. 83 (1963); and (4) that he received ineffective assistance of counsel.

Magistrate Judge Eaton issued a Report and Recommendation ("Report") recommending that the Court deny the habeas petition. Petitioner timely filed objections to the Report.  Petitioner also requested that the Court conduct an evidentiary hearing on what he contends were errors at trial.  For the reasons stated

1

below, both the petition for a writ of habeas corpus and the request for an evidentiary hearing are denied.

## I. Background[1]

### A. The Crime

Near midnight on Friday, September, 2, 1994, Niki-a Santos ("Santos") stood in front of 180 Edgecombe Avenue, talking with friends and waiting for someone to change a flat tire on his car. (Report 3.)  Thirteen-year-old Nicholas Veal ("Veal") soon approached and saw Robert David Mickens ("Mickens") in the distance. (Report 3.)  Veal and Santos decided to greet Mickens; as they walked toward him, Mickens crossed the street.  Another individual -- later identified by Santos as Petitioner -- pursued Mickens as he crossed.  (Report 3.)  Santos and Veal watched as Petitioner and Mickens began to fight in front of 210 Edgecombe Avenue.  (Report 3.)  The fight quickly escalated, with Petitioner ultimately firing a number of bullets at Mickens. Eleven bullets struck Mickens -- first fatally in the head, then in the neck, chest, shoulder, buttocks, and hand.  Petitioner fled after the shooting.  (Resp't Br. 9.)

---

[1] Magistrate Judge Eaton has set forth a detailed background of this case in his Report, familiarity with which is assumed. The Court will restate the most relevant facts.

**B. The Witnesses and Testimony**

Police arrived at the scene within minutes and began to question witnesses. (Report 4.) Detective Carlton Berkley ("Berkley") testified that he spoke with Veal and Santos for five to ten minutes at the scene before bringing them to the police station for questioning. (Tr. Berkley: 297-99, 36.) During those interviews, Santos told Berkley that he recalled hearing someone speak in a "Jamaican accent" immediately before the shooting. (Tr. Berkley: 320.) He stated that he then saw an individual (whom he later identified as Petitioner) hit Mickens with his shoulder. (Tr. Berkley: 320.) At this point, Santos did not state precisely how far he was from the shooter. (Tr. Berkley: 321.) At trial, however, Santos testified that he was standing "close" to a drug-treatment facility. (Tr. Santos: 60.) When pressed, Santos stated that he had stood about twenty feet from the shooter, which would have placed him in front of 204 Edgecombe Avenue. (Tr. Santos: 55; Report 3.)

Michael Levien,("Levien") a private investigator retained by the defense, testified that seven buildings stood between 180 Edgecombe Avenue (where Santos initially spoke with his friends during the tire repair) and 204 Edgecombe Avenue (Santos's approximate location when the shooting occurred). (Tr. Levien: 380.) Levien further stated that each building was "approximately 17 feet" wide and that the distance between the

"'northern edge of building number 180' and 'the southern edge of 208' was about 198 feet." (Report 3.)

As for the lighting, Santos testified at trial that although it was dark, he was able to see Petitioner's face clearly because lights from the drug-treatment center near the shooting illuminated the area.  (Tr. Santos: 61.)  Onaje Mu-Id ("Mu-Id"), one of the treatment center's employees, testified that the lights from the treatment center were not working that evening. (Def. Br. 6.)  On cross-examination, however, Mu-Id revealed that he was not working when the shooting occurred, but "determined from police photographs that the timer must have malfunctioned at approximately 7:00 p.m."  (Def. Br. 6 n.4.)

Santos testified that he knew Petitioner before the shooting because he had purchased marijuana from Petitioner three or four times.  (Tr. Santos: 69.)  During those transactions, Santos said that he heard Petitioner speak with a "Caribbean accent."  (Tr. Santos: 70.)  Santos also testified that Petitioner was "slim" and "brown skinned" but "not dark."  (Tr. Santos: 72-73.)  He further testified that he recalled seeing Petitioner early in the afternoon on the day of the murder and that Petitioner was dressed in the same clothes as the shooter. (Tr. Santos: 72-75.)

When asked at trial if he knew Petitioner's height, Santos (who stands 6'3") stated that the individual came almost up to his nose.  (Tr. Santos: 72.)  Santos had provided the same

4

description of the shooter on the night of the shooting.  (Tr. Santos: 168.)  Based on that description, Detective Berkley noted that the shooter was "about 6 feet"; Santos signed a statement including that information.  (Tr. Santos: 169.)  Petitioner is in fact approximately 5'8" tall.  (Tr. Berkley: 345.)

Veal did not testify at Petitioner's trial.  (Tr. Berkley 297-98.)  Both Berkley and the District Attorney's office attempted to speak with Veal after the initial interviews.  Veal's mother, however, refused to allow officials to speak with her minor son.  (Tr. 417.)  Moreover, Veal ignored a subpoena that prosecutors delivered to his home.  (Tr. 417.)  In light of these failed attempts to reach Veal, the People argued that he was not within their control.

### C. The Missing Witness Charge Denial

Petitioner was tried in New York County Supreme Court.  At the end of trial, Petitioner requested that the judge give the jury a missing witness charge with respect to Veal and two other witnesses known only as "Margaret" and "Venus." (Tr. 416.) Justice Nicholas Figueroa ("Justice Figueroa") declined, noting that the People were unable to determine the identities of Margaret and Venus and that the People did not have the requisite control over Veal. (Tr. 416-417.)

**D. Santos's Invocation of the Fifth Amendment**

During the cross-examination of Santos, Petitioner's trial counsel asked several questions relating to Santos's drug use; Santos invoked the Fifth Amendment in response to some of these questions. (Tr. Santos: 111.) At the end of the trial, Justice Figueroa instructed the jury that, while it is improper to draw inferences based on a witness's choice to invoke the Fifth Amendment, the decision to do so may be considered in evaluating that witness's credibility.[2] (Tr. 505.)

**E. The Jury Charge With Respect to Petitioner's Flight**

Detective Torrellas ("Torrellas") testified that on September 18, 1994, he drove to Edgecombe Avenue in pursuit of Petitioner. (Tr. Torrellas 276.) He testified that he saw Petitioner sitting on a stoop in front of a red brick building, but that Petitioner fled when Torrellas stopped and began to exit the unmarked police car. (Tr. Torrellas 276.) Justice Figueroa instructed the jury that it could consider the testimony

---

[2] Justice Figueroa specifically instructed the jury, in part, as follows:
> [W]itnesses have a constitutional right to refuse to answer . . . questions that may . . . incriminate them . . . . [N]o inference unfavorable or favorable . . . may be drawn . . . from this refusal to answer . . . particular questions. However, since the questions . . . relate solely to [Santos's] credibility as a witness, you may take into consideration his refusal to answer . . . in determining . . . to what extent you believe his testimony.

(Tr. 505.)

regarding Petitioner's flight only if they believed it was "solely motivated by consciousness of guilt relative to the shooting." (Tr. 513.) If, instead, the jury concluded that the "conduct [had] an innocent explanation," Justice Figueroa instructed them to "disregard [it] totally." (Tr. 512-13.)[3]

### F. Conviction and Habeas Petition

Petitioner was convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second and Third Degrees. He was sentenced to concurrent terms of 18 1/2 years to life for the murder, 5 to 15 years for the criminal possession of a weapon in the second degree and 2 1/3 to 7 years for possession of a weapon in the third degree. (Def. Br. 14.) He exhausted his state remedies and petitions this Court for a writ of habeas corpus.

---

[3] A more detailed recitation of Justice Figueroa's jury instruction follows:
> Whether [Petitioner's] flight[] does in fact evidence a guilty mind on the part of the defendant, and if so, what weight should be given to such evidence is exclusively a jury question. . . . Your first duty is to decide whether [this] evidence . . . evidence[s] a consciousness of [Petitioner's] guilt . . . . Such conduct may have an innocent explanation. If you find such an explanation from the nature of the conduct itself, you must disregard [it] totally, forget that you heard it. . . . Thus, if an innocent . . . purpose may be drawn from the evidence, you may disregard it completely. Only if you find that [Petitioner's] conduct . . . was solely motivated by consciousness of guilt relative to the shooting, may you consider and weight it in your deliberations.

(Tr. 512-514.)

He alleges that the trial court violated his right to a fair trial by: (1) denying his request for a missing witness charge; (2) refusing to allow his trial attorney to demonstrate the alleged distance between Santos and the shooter in the hallway; (3) allowing the admission of evidence relating to Petitioner's prior bad acts as well as Santos's identification; and (4) instructing the jury that flight might evince guilt.  (Report 2.) He also alleges that his Sixth Amendment right to confront witnesses was violated when Santos invoked the Fifth Amendment on the stand and that Justice Figueroa's instruction regarding Santos's invocation of the Fifth Amendment was improper; that a Brady violation occurred because "the defense did not receive a report of a police-to-police radio communication"; and that his trial attorney provided ineffective assistance of counsel. (Report 2.)

On August 9, 2006, Magistrate Judge Eaton issued a Report recommending that the Court deny the habeas petition in its entirety.  Petitioner timely objected.  In his objections, Petitioner challenges nearly every point in the Report and requests an evidentiary hearing.  Petitioner also submitted an independent letter to the Court dated September 13, 2006, requesting an evidentiary hearing on Santos's allegedly inconsistent testimony.  (Pet'r Objections 1-2, ¶ 6; Pet'r Letter to Judge Wood, dated Sept. 13, 2006.)

**II. Standard of Review**

The Court notes that "pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Courts should examine pro se habeas petitions "with a lenient eye, allowing borderline cases to proceed." Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1981). When a magistrate judge issues a report and recommendation, the appropriate standard of review to be applied by the reviewing district court depends on whether objections are filed. See Nuetzel v. Walsh, No. 00-CV-8776, 2006 WL 2742000, at *1, 2006 U.S. Dist. LEXIS 69583, at *1 (S.D.N.Y. Sept. 26, 2006). "'If no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error.'" Id. (quoting Edwards v. Fischer, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006)). However, "where objections . . . are 'specific and . . . address only those portions of the proposed findings to which the party objects,' district courts should conduct a de novo review of the issues raised by the objections." Nuetzel, 2006 WL 2742000, at *1, 2006 U.S. Dist.

9

LEXIS 69583, at *1 (quoting Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992)).  Because Petitioner's objections -- even considered leniently -- are perfunctory, repeat arguments that Petitioner has previously made, and do not allege that Magistrate Judge Eaton made any specific errors, the Court will review the Report for clear error.  See Nuetzel, 2006 WL 2742000, at *1, 2006 U.S. Dist. LEXIS 69583, at *1.

**III. Discussion**

    **A. Petitioner's General Objection to Magistrate Judge Eaton's Findings**

In his objections to the Report, Petitioner argues that, "the [trial] judge reduced the people's burden of proof and clearly denied petitioner his right to have all elements prov[ed] beyond a reasonable doubt."  (Pet'r Objections 2, ¶ 7.)  This objection appears to be a response to Magistrate Judge Eaton's statement that habeas review is inappropriate for state-law questions unless "the trial judge's decisions . . . [were] 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without [them].'" (Report 11) (quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)).

Petitioner provides no explanation for his contention that the burden of proof was lowered. He simply attacks Magistrate Judge Eaton's <u>explanation</u> of the law and asks this court to draw inferences from the record that would be more favorable to a finding of innocence, which is inappropriate on habeas review. <u>Martin v. Scully</u>, 748 F. Supp. 159, 163 (S.D.N.Y. 1990). "The standard for measuring the sufficiency of the evidence in a federal habeas corpus proceeding is "'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id.</u> (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). Because the evidence introduced at trial -- specifically Santos's testimony -- is sufficient to permit a rational jury to conclude that Petitioner shot and killed Mickens, this standard has been satisfied.

**B. Failure to Provide a Missing-Witness Charge**

Petitioner raised several objections that relate to Justice Figueroa's refusal to give a missing-witness charge. In paragraph seven of his objections, Petitioner argues that "if the judge's jury instructions w[ere] constitutionally defective[,] prejudice is presumed." (Pet'r Objections 2, ¶ 7.) He argues that a missing-witness charge might lead the jury to discredit Santos's testimony that he was about 20 feet from the shooter.

11

As Magistrate Judge Eaton pointed out, however, the jury heard sufficient testimony to permit them to consider whether Santos's distance estimate was accurate. Thus, even if the trial judge had erred in declining to give a missing-witness charge, that error likely would have been harmless.

Regardless, it is clear that the trial judge correctly declined to give such a charge. The record establishes that the People never controlled Veal -- both he and his mother spurned the People's repeated attempts to speak with him and utterly ignored a hand-delivered subpoena. (Tr. 417.) Likewise, the People were unable to obtain the full names of "Margaret" and "Venus" and had no further information about their identities or residences. (Tr. 417.) Thus, Petitioner's objections to Magistrate Judge Eaton's conclusions that the trial judge correctly declined to provide a missing-witness charge must fail. (Pet'r Objections 3-4, ¶¶ 13, 15.)

### C. Refusal to Allow Defense Counsel to Take the Jury into the Hallway to Demonstrate Distance

Petitioner argues that the trial court violated his Sixth and Fourteenth Amendment rights by refusing to allow defense counsel to demonstrate how far Petitioner believed Santos stood from the shooter by taking the jury into the hallway. (Pet'r Objections 2, ¶ 8.) As the Appellate Division pointed out, however, "[t]here was no reason to interrupt the trial to take

the jury into the hallway to see how long it was, since they passed through the same hallway several times a day throughout the trial." (Report 13-14.) Based on these factors, Magistrate Judge Eaton's conclusion that "the refusal to permit defense counsel to take the jury into the hallway was not error and it did not prejudice" Petitioner is eminently reasonable. (Report 14.)

### D. Petitioner's Prior Bad Acts

Petitioner argues that the trial court's failure to exclude evidence that he dealt marijuana unduly prejudiced him. (Pet'r Objections 3, ¶ 10.) Magistrate Judge Eaton concluded that this argument fails because evidence that Plaintiff dealt marijuana provided a justification for Petitioner's flight from police –- an argument that Plaintiff's trial counsel made on summation.

Nothing suggests that the introduction of prior bad acts "provide[d] the basis for conviction or . . . remove[d] a reasonable doubt." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998). Therefore, as Magistrate Judge Eaton concluded in his Report, "the evidence about marijuana sales is not a valid ground for habeas relief." (Report 16.) As such, Petitioner's objection to Magistrate Judge Eaton's conclusion is without merit.

### E. Instructions About Petitioner's Flight From Police

Petitioner argues that the jury instruction regarding Petitioner's flight amounted to prosecutorial misconduct. (Pet'r Objections 3, ¶ 11.) This claim is meritless; Petitioner provides no support for this argument and does not explain how a jury instruction relates to misconduct by a prosecutor.

Additionally, the instruction was even-handed and fair to Petitioner; it stated: "if an innocent . . . purpose may be drawn from the evidence, [the jury] may disregard it completely." (Report 8.) Petitioner has not shown that the instruction "removed a reasonable doubt that would have existed" otherwise. Magistrate Judge Eaton correctly disposed of this claim. (Report 11) (quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)).

**F. Santos's Invocation of the Fifth Amendment**

Petitioner argues that the Court must determine whether Santos's testimony should have been suppressed based on alleged inconsistencies in his testimony. (Pet'r Objections 3, ¶ 12.) This argument fails for two reasons. First, it is well-settled that courts "will not disturb the jury's findings with respect to [a] witnesses' credibility." United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989). Second, suppression is not warranted where testimony is alleged to be inconsistent. "[T]he proper place for a challenge to a witness's credibility is 'in cross-examination and in subsequent argument to the jury, not in an

14

appellate brief.'" Id. (quoting United States v. Friedman, 854 F.2d 535, 558 (2d Cir. 1988)).

**G. Police Radio Communications**

Petitioner argues that, because the People withheld a recording of a police radio communication, the Court must determine whether that failure to disclose prejudiced him. (Pet'r Objections 3, ¶ 13.) Magistrate Judge Eaton noted that the radio communication at issue describes "the shooter's height, weight and clothing," which "matche[d] exactly the statements that Det. Berkley testified he received from Santos (orally a few minutes after the shooting, and in a signed statement about [three] hours later)." (Report 19.) He therefore concluded that "it would have made no difference whether, at trial, Petitioner's trial attorney did or did not have this duplicative radio report." (Report 19.) Because the communication was duplicative, it was not material to the guilty verdict. Accordingly, the People did not run afoul of Brady.[4]

---

[4] In earlier submissions, Petitioner alleged that the People violated People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), by withholding the communication. Although he has abandoned the claim here, the Court notes that Petitioner's Rosario claim, if properly argued and cognizable on habeas review, would lack merit for the same reasons as the Brady claim.

15

**H. Ineffectiveness of Appellate Counsel**

Petitioner also objects to Magistrate Judge Eaton's conclusion that he failed to establish ineffective assistance of counsel. (Pet'r Objections 4, ¶ 14; Report 20.)  To support this objection, Petitioner argues that appellate counsel "failed to present significant and[] obvious issue[s], and raised issues that were significantly weaker." (Pet'r Objections 4, ¶ 14.) Thus, Petitioner objects only to appellate counsel's strategy, which objection is plainly insufficient to establish ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 689 (1984) (stating that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)).[5]

---

[5] Plaintiff also states, without elaboration, that his counsel "failed to preserve[] a substantial issue for appellate counsel's review, thus denying petitioner a statutory review." (Pet'r Objections 4, ¶ 14.)  This objection, even viewed leniently in light of Petitioner's pro se status, does not make sense.  Assuming that it is a statement that trial or appellate counsel waived important issues, the Court sees nothing that prejudiced Petitioner on such a point.

16

**I. Evidentiary Hearing**

Finally, Petitioner has requested that the Court conduct an evidentiary hearing to address two issues: Santos's inconsistent statements and whether, as a result of those statements, Petitioner was wrongly convicted. (Pet'r Objections 1, ¶ 6; Pet'r Letter to Judge Wood, dated Sept. 13, 2006.)  Post-AEDPA, "the Supreme Court and Congress have severely limited the situations in which a habeas court is required or even permitted to hold an evidentiary hearing to consider factual claims by a habeas petitioner."  Ruine v. Walsh, No. 00 Civ. 3798, 2005 WL 1668855, at *2, 2005 U.S. Dist. LEXIS 14297, at *6 (S.D.N.Y. July 14, 2005) (quoting Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999)). An evidentiary hearing is appropriate where "[28 U.S.C.] § 2254(e)(2)'s provisions do not apply to the claim because the petitioner did not fail to develop the factual basis of the claim in the state court proceedings, or . . . where the petitioner's claim falls under one of the two exceptions to § 2254(e)(2)." Ruine, 2005 WL 1668855, at *3, 2005 U.S. Dist. LEXIS 14297, at *7.  If the statute does not apply -- as it does not here -- the Court "should consult pre-AEDPA standards."  Id.  Under the pre-AEDPA standards, a "petitioner is entitled to an evidentiary hearing . . . if he has alleged facts that would entitle him to relief and the state courts, for reasons not attributable to him, denied him a full and fair hearing to explore those facts."

17

United States ex rel. Hampton v. Leibach, 347 F.3d 219, 244 & n.12 (7th Cir. 2003).  Moreover, "[e]ven if a petitioner meets the requirements of 28 U.S.C. 2254(e)(2), whether that petitioner ought to be afforded an evidentiary hearing remains an issue committed to the district court's sound discretion."  Ruine, 2005 WL 1668855, at *3, 2005 U.S. Dist. LEXIS 14297, at *8

Because Petitioner developed the factual basis of the claim at trial, he is entitled to an evidentiary hearing only if the "facts would entitle [him] to relief and the state courts . . . denied him a full and fair hearing to explore those facts."  Leibach, 347 F.3d at 244.  Petitioner cannot meet this standard.  The facts Petitioner seeks to uncover in the evidentiary hearing have been fully explored at trial.  After hearing that evidence -- including the alleged inconsistencies -- the jury made credibility determinations and concluded that the People had proven beyond a reasonable doubt that Petitioner had shot and killed Mickens.  Petitioner needs no evidentiary hearing; he simply disagrees with the jury's conclusions.  Because an evidentiary hearing would provide no new information, Petitioner's request is denied.

**IV. Conclusion**

Accordingly, the Court accepts and adopts Magistrate Judge Eaton's Report.  Petitioner's petition for a writ of habeas corpus is denied in its entirety.  Petitioner's request for an

evidentiary hearing is also denied.  Finally, because Petitioner has not "made a substantial showing of a denial of a constitutional right, this Court will not grant a certificate of appealability." 28 U.S.C. § 2253(c)(2).  The Clerk of Court is directed to close this case.  Any pending motions are moot.

SO ORDERED.

Dated: New York, New York
       December 20, 2006

_____
KIMBA M. WOOD
UNITED STATES DISTRICT JUDGE